IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MELINDA WILLIAMS, ) | |
| *on behalf of* E.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 7:19-cv-1134-GMB |
| ) | |
| ANDREW M. SAUL, [1] Acting ) | |
| Commissioner, Social Security ) | |
| Administration ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM OPINION**

On June 21, 2016, Plaintiff Melinda Williams filed an application for supplemental security income on behalf of her daughter, E.C., the claimant. E.C.'s alleged disability onset date is October 20, 2014. Her application for benefits was denied at the initial administrative level. Williams then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on July 19, 2018. He denied E.C.'s claims on September 7, 2018. Williams requested a review of the ALJ's decision by the Appeals Council, which declined review on June 19, 2019. As a result, the ALJ's decision became the final decision of the Commissioner of the

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

Social Security Administration (the "Commissioner") as of June 19, 2019.

Williams' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on a careful review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and remanded to the ALJ for proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the

court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

An individual under the age of 18 is considered disabled if she shows a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  The claimant bears the burden of proving that she is disabled, and she is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

For claimants under the age of 18, a determination of disability under the Social Security Act requires a three-step analysis. 20 C.F.R. § 416.924(a).  The Commissioner must determine in sequence:

> (1) Is the child engaged in substantial gainful activity?
> (2) Are the child's impairments severe?
> (3) Do the child's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

*See Ware v. Colvin*, 997 F. Supp. 2d 1212 (N.D. Ala. 2014).

In determining whether an impairment or combination of impairments meets

a listing, "the ALJ must consider six domains which are broad areas of functioning intended to capture all of what a child can and cannot do." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (internal citation and quotations omitted). Those domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objections, (4) caring for yourself, and (5) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). "Functional equivalence is found if the child's impairment or combination of impairments results in marked limitations in two domains of functioning or an extreme limitation in one domain." *Ware*, 997 F. Supp. 2d at 1216 (internal citation and quotation omitted). "If the impairment(s) does not satisfy the duration requirements, or does not meet, medically equal, or functionally equal one of the Listings in the Regulations, a finding of not disabled will be reached and the claim will be denied." *Id.*

### III.  FACTUAL BACKGROUND

E.C. was born on June 23, 2010 and was 8 years old at the time of the ALJ's decision. R. 13 & 164. She lives with her mother, brother, and grandmother in Eutaw, Alabama. R. 165 & 465. Her primary complaint is an overactive thyroid. R. 202. She has a goiter and suffers from advanced bone age and proptosis. Doc. 10 at 4; R. 21. E.C. has never engaged in any substantial gainful activity. R. 19.

The ALJ held a hearing in E.C.'s case on July 19, 2018. E.C., Williams, and

their attorney testified at the hearing. The ALJ primarily asked questions of Williams and the attorney. E.C. was in the third grade at the time of the hearing. R. 75. She testified that reading was her favorite subject in school. R. 75. Williams testified that their doctors had considered surgery for E.C.'s hyperthyroidism, but had decided that she was too young. R. 78. Instead, the doctors hoped that medication could shrink E.C.'s goiter. R. 78. Williams explained that E.C.'s thyroid levels had been increasing even though she takes two 20 milligram pills of methimazole per day. R. 21 & 79.

Williams told the ALJ that E.C. was "not really outspoken, outgoing like other little kids her age, and it kind of keeps her held back." R. 80. Although E.C. has never repeated a grade, she does have an Individualized Education Plan and is pulled out of regular classes to attend special education classes. R. 81 & 83. She receives specialized help for reading and math, and she is below grade level in both of these subjects. R. 81. When E.C. does remain in her regular classes, either a teacher or another student helps her with schoolwork. R. 83. Williams began to explain that E.C. receives assistance because otherwise she "marks whatever" on her assignments and sometimes does not finish her lessons. R. 83. The ALJ interrupted Williams and asked, "Okay, but let—well what is in this IEP that's different from what you're saying?" R. 83. When the attorney told him that he was trying to convey a "snapshot" of what happens at school, the ALJ interrupted again, described the

6

content of E.C.'s IEP, and said, "that's exactly what they're saying in this IEP.  So, but I don't think you've given me anything additional there.  Anything further we need to consider?" R. 84.  The attorney declined, and the hearing was terminated at that point. R. 84–85.

Within the evidence before the ALJ is a psychological evaluation from Dr. John R. Goff of Riverside Medical Center in Tuscaloosa, Alabama. R. 465.  E.C.'s therapist had recommended an evaluation, so her treating physician referred her to Dr. Goff. R. 465.  Dr. Goff completed the evaluation on February 23, 2017. R. 465.  He performed four tests on E.C.: (1) the Wechsler Intelligence Scale for Children, (2) the Reitan-Indiana Aphasia Screening Test for Children, (3) the third edition of the Wechsler Individual Achievement Test, and (4) the Quotient ADHD system. R. 466.  Williams also completed the Pediatrics Symptom Checklist and the Vanderbilt ADHD Parent Diagnostic Rating Scale. R 466. Dr. Goff determined that E.C. was on the lower end of the borderline range of psychometric intelligence. R. 466.  He diagnosed her with pervasive developmental disorder and mathematics disorder, and noted that her academic achievement and social adjustment should be monitored. R. 469.

The ALJ issued his decision on September 7, 2018. R. 29.  He found that E.C. suffers from the following severe impairments under 20 C.F.R. § 416.924(c): Graves' disease, borderline intellectual functioning, and learning disorder. R. 19.

The ALJ concluded that these severe impairments are more than slight abnormalities and could have more than a minimal effect on E.C.'s ability to perform basic activities. R. 19.  The ALJ also noted that E.C. had a one-time diagnosis of disruptive behavior disorder and a one-time diagnosis of autism spectrum disorder, but found these impairments to be non-severe. R. 19.  The ALJ concluded at step three of his analysis that none of E.C.'s impairments (or a combination of her impairments) satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 20.  The ALJ reached this conclusion because E.C. does not suffer from an extreme limitation in any domain of function or a marked limitation in any two domains of functioning. R. 29.  Therefore, the ALJ determined that E.C. is not disabled within the meaning of the Social Security Act. R. 29.  Based on these findings, the ALJ denied Williams' claims on behalf of E.C.

## IV.  DISCUSSION

Williams now presents two issues on appeal: (1) the ALJ erred in making a diagnosis that was not made by any medical source in the record; and (2) the ALJ erred in giving only partial weight to the opinion of Dr. Goff, the only examining neuropsychologist, who reviewed the evidence of record and administered objective testing, and whose opinions are consistent with the opinion of the teacher and with the school records. Doc. 10 at 1–2.  The court agrees with the second contention but not the first.

## A.     Medical Diagnosis

Williams argues that it was improper for the ALJ to diagnose E.C. with borderline intellectual functioning because a medical source never made that diagnosis. Doc. 10 at 6.  It is true that an ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Wild v. Astrue*, 581 F. Supp. 2d 1155, 1160 (N.D. Ala. 2008) (citing *Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir. 1992) (Johnson, J. concurring)).  But an ALJ's assessment of a severe impairment is not grounds for reversal simply because no physician made the same diagnosis.

For a child under the age of 18, a determination of disability under the Social Security Act requires a three-step analysis.  At step one, the ALJ determines whether the child has engaged in any substantial gainful employment. *See Ware*, 997 F. Supp. 2d at 1212. At step two, the ALJ determines whether the child suffers from any severe impairments. *Id.*  At step three, the ALJ determines whether any of the child's impairments—severe or not—satisfy the criteria listed in the Social Security regulations. *Id.*

An "impairment is [] considered severe if it [] significantly limit[s] the claimant's physical or mental ability to do basic work activities." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  Step two "acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment,

9

whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) ("Thus, the finding of any severe impairment, whether or not it results from a single severe impairment or combination of impairments that together qualify as 'severe' is enough to satisfy step two."); *Hamilton v. Colvin*, 2016 WL 613888, at *3 (N.D. Ala. Feb. 16, 2016) (holding that "the ALJ could not have committed any error at step two because he found that the claimant had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two"). Thus, so long as the ALJ concludes that at least one severe impairment exists, he must move to the third step of the analysis and consider all of the claimant's impairments, regardless of whether the impairments meet the definition of "severe." Consequently, any error at step two is harmless if the ALJ finds a severe impairment and considers all the claimant's impairments in the later steps. *See Hearn*, 619 F. App'x at 895 ("Any error at step two was harmless because the ALJ found in Hearn's favor as to impairment, and the ALJ properly noted that he considered Hearn's impairments in the later steps."). "In other words, the ALJ's failure to find a particular impairment severe is not reversible error if the ALJ found other severe impairments." *Hamilton*, 2016 WL 613888, at

*9 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).  Likewise, the ALJ's finding that a claimant suffers from a severe impairment for which she has not been diagnosed is harmless error as long as the ALJ moves on from step two.

Here, at step two of his analysis, the ALJ determined that E.C. suffers from the severe impairments of Graves' disease, borderline intellectual functioning, and learning disorder. R. 19.  Williams takes issue with the ALJ's assessment of borderline intellectual functioning when Dr. Goff and the other medical sources never reached this conclusion. Doc. 10 at 8.  She contends that the ALJ erred in making a diagnosis that was not determined by any medical source in the record. Doc. 10 at 7.  To support this contention, Williams recites the legal standard preventing an ALJ from substituting his judgment for that of a medical professional. Doc. 10 at 8.  She also alleges that Dr. Goff did not diagnosis E.C. with borderline intellectual functioning because the fifth edition of the Diagnostic and Statistic Manual of Mental Disorders no longer recognizes this condition, but she does not back this allegation with any evidence. Doc. 10 at 8.  Williams does not explain how the ALJ substituted his judgment for that of the medical professionals by finding an additional severe impairment that was not formally diagnosed.  Additionally, Williams does not cite to any case law demonstrating that an ALJ is prevented from assessing a claimant with an impairment at step two unless that impairment has been

medically diagnosed. She also does not explain how E.C. was harmed by the borderline intellectual functioning assessment. Ultimately, Williams has not demonstrated that the ALJ's finding at step two was legal error.

In any event, "[s]tep two is merely a threshold inquiry." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is a gatekeeper that "allows only claims based on the most trivial impairments to be rejected," *id.*, and any error at step two is harmless if the ALJ considers all of the claimant's impairments at the step three. *See Hearn*, 619 F. App'x at 895. That is exactly the scenario here. The ALJ found that E.C. suffers from severe impairments at step two, so he moved on to step three where he considered all of E.C.'s alleged impairments. R. 19. He considered E.C.'s thyroid problems, Dr. Goff's diagnoses of pervasive developmental disorder and mathematics disorder, and the West Alabama Mental Health Center's diagnosis of disruptive behavior disorder. R. 20–23. The court concludes that—even if the ALJ's diagnosis had been improper in some way—the ALJ did not commit reversible error at step two because he found at least one severe impairment and considered all of E.C.'s alleged impairments in his analysis.

## B.     Medical Opinion

Williams contends that the ALJ erred by assigning only partial weight to the opinion of the examining neuropsychologist. Doc. 10 at 9. The ALJ assigned partial weight to the opinion of Dr. John R. Goff because "it is a solitary evaluation with

internal inconsistencies regarding developmental disorders." R. 23. The ALJ allowed that Goff's opinion "contains some objective test results." R. 23. However, the ALJ concluded that "Dr. Goff's diagnosis is [] inconsistent with the reports of the teacher and therapist." R. 20. The court cannot ascertain whether this reasoning is supported by substantial evidence.

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.* "The opinions of non-examining, non-reviewing physicians are entitled to little weight when contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012).

In the Eleventh Circuit, "the opinion of a physician who examined a claimant on only one occasion is not entitled to great weight." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. July 29, 2019) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). "As one-time

examiners, the physicians [are] not treating physicians, and the administrative law judge [is] not required to afford special deference to their opinions." *Huntley v. Soc. Sec. Admin, Comm'r*, 683 F. App'x 830, 833 (11th Cir. 2017).  But "[w]hile the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." *Choquette v. Comm'r of Soc. Sec.*, 695 F. Supp. 2d 1311, 1330 (M.D. Fla. 2010).

In any event, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  This is because the "ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition." *Smith v. Astrue*, 641 F. Supp. 2d 1229, 1233 (N.D. Ala. 2009). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (internal citation omitted).  The court cannot affirm the ALJ's decision "simply because some rationale might have supported the ALJ's conclusion." *Winschel*, 631 F.3d at 1179 (internal citation omitted).  And the conclusion must be supported by substantial evidence. *See Phillips*, 357 F.3d at 1241.

Here, the ALJ was not required to afford Dr. Goff's opinion great weight because Dr. Goff is a one-time examiner. *See Jackson*, 779 F. App'x at 685 ("[T]he opinion of a physician who examined a claimant on only one occasion is not entitled to great weight."). And it was appropriate for the ALJ to assign only partial weight to Dr. Goff's opinion as long as his reasons for doing so were supported by substantial evidence. *See Winschel*, 631 F.3d at 1179. However, the ALJ failed to provide sufficient reasoning for the court to determine whether substantial evidence supports his decision to assign only partial weight to Dr. Goff's opinion. The core deficiency is that the ALJ did not provide enough explanation for the court to understand how Dr. Goff's report either is internally inconsistent or is inconsistent with the therapist's notes and the teacher's function report.

The court has reviewed the therapist's notes. R. 418–64. And from what the court can ascertain, these treatment notes are consistent with Dr. Goff's opinion. For example, E.C. met with psychologist Chastity Williams at the West Alabama Mental Health Center to address anger management and communication skills from August 2016 through November 2016. R. 419 & 460. E.C.'s mother told the therapist that E.C. had a history of angry outbursts, was combative when disciplined, and could not explain why she reacted in a hostile way. R. 454. E.C.'s treatment goals were to limit her angry outbursts and to learn communication skills. R. 449. At the West Alabama Mental Health Center, E.C. participated in individual therapy sessions and

group therapy sessions. At her first individual session, the therapist noted that E.C. was quiet and did not respond to open-ended questions. R. 437. During their second session in September 2016, the therapist recorded that E.C. denied being angry at home but was not talkative during the session. R. 434. During their third session in late September, the therapist continued to note that E.C. had little to say. R. 425.

In group sessions, the therapist noted that E.C. had to be prompted to talk. R. 422 & 428. She would act in conformity with the group and did nothing independently. R. 422 & 428. In addition to observing group therapy sessions, the therapist met with one of E.C.'s teachers. R. 440. They discussed whether Williams' concerns about E.C. aligned with the behavior E.C. displayed in school. R. 440. They also talked about E.C.'s treatment goals. R. 440.

In November 2016, the therapist discussed E.C.'s progress with her mother. R. 420. The therapist continued to report that E.C. was quiet and had to be prompted during every session. R. 420. She relayed that E.C. tends to agree with her therapists' statements and tries to blend into a group. R. 420. Her mother stated that her behavior at home was completely different and that she was talkative, angry, and prone to lying. R. 420. Despite any inconsistencies in E.C.'s behavior during therapy and school, nothing in the therapist's notes suggests that she did not credit Williams' complaints of angry outbursts at home.

The court also has reviewed the questionnaire completed by E.C.'s teacher.

16

R. 269–72.  The teacher reported that E.C. was not on grade level with the rest of her peers. R. 269.  She wrote that "[m]ost of [E.C.]'s work was cut into sections and it was read to her." R. 269.  E.C. could do some work independently, but the majority of her assignments were read to her by a teacher or a classmate. R. 269.  The teacher indicated that E.C.'s attention span was short, and she had to be given instructions repeatedly. R. 269.  The teacher noted that E.C. was quiet and did not often open up and talk to her. R. 269.  The teacher also reported that E.C. did not socialize with her peers. R. 270.  She conveyed that E.C.'s "weaknesses are not [those] of a normal student," and she concluded that E.C. has extreme limitations in acquiring and using information, and in attending and completing tasks. R. 270–71.  She found that E.C. had less than a marked limitation in interacting and relating with others, and no limitation in moving about and manipulating objects, caring for herself, or health and physical wellbeing. R. 272.

Dr. Goff diagnosed E.C. with pervasive developmental disorder and mathematics disorder. R. 469.  He completed his evaluation on February 23, 2017. R. 465.  Dr. Goff did not have access to records pertaining to E.C.'s hyperthyroidism, but he discussed E.C.'s condition with Williams. R. 465.  He noted that E.C. looked "remarkably older than her stated age" because of her size. R. 466.  He reported that E.C. was "very reticent in terms of talking" and that she "has a tendency to respond with a sort of blank stare and is a bit difficult to get to respond." R. 466.  Dr. Goff

surmised that she was "concerned about perhaps getting the wrong answer, so it is hard to elicit a response from her." R. 466. Williams reported to Dr. Goff that E.C. has had behavioral problems both at home and at school. R. 466. Based on the tests he performed and the questionnaires Williams completed, Dr. Goff determined that E.C. performs on the lower end of the borderline range of psychometric intelligence. R. 466. He also concluded that E.C. has difficulty with interpersonal interactions. R. 466. Dr. Goff found that E.C.'s drawings were poor and primitive. R. 467. He reported that she cannot read at a second-grade level, and is unable to perform even simple mathematical calculations. R. 467. He concluded that she had specific difficulties with math. R. 467. He further determined that she is unable to deal with some of the social aspects of school and has a severe learning disability for mathematics that may be associated with her hyperthyroidism. R. 467.

Dr. Goff recommended that Williams request evaluation for special education services. R. 467. He advised against grade retention, but determined that E.C. required special education services to advance to the second grade. R. 468. He concluded that her behavior problems may be related to her inability to complete math homework, and suggested that she be exempted from math homework "because it is pretty much a waste of time and serves primarily as an irritant." R. 469. He noted that E.C. had "an odd and unusual style of interaction." R. 469. In addition to diagnosing E.C. with pervasive developmental disorder and

18

mathematics disorder, Dr. Goff recommended monitoring of her academic achievement and social adjustment. R. 469.

It is not readily apparent to the court why the ALJ found Dr. Goff's opinion either internally inconsistent or inconsistent with the opinion of the therapist and the teacher. The teacher, the therapist, and Dr. Goff found that E.C. was reticent during her interactions with them. R. 269, 437 & 466. Both the therapist and Dr. Goff encountered difficulty in eliciting verbal responses from E.C. *See* R. 437 & 466. Both the therapist and Dr. Goff considered Williams' complaints about E.C.'s behavioral problems and outbursts at home. R. 454 & 466. Dr. Goff's opinion that E.C. has difficulty with interpersonal interaction (R. 466) is broadly consistent with the teacher's observation that E.C. does not socialize with her peers (R. 270) and the therapist's observation that E.C. tries to blend in when in a group setting. R. 420. Both the teacher and Dr. Goff determined that E.C. was not functioning at grade level. R. 269 & 467. Dr. Goff's diagnosis of mathematics disorder (R. 467) is supported by the teacher's finding that E.C's "weaknesses are not of a normal student." R. 270. And there are no apparent internal inconsistencies in Dr. Goff's report. Without more explanation from the ALJ, the court is unable to ascertain what inconsistencies he perceived and why these inconsistencies merited an assessment of partial weight. Ultimately, the court cannot conclude that the ALJ's decision to assign partial weight to Dr. Goff's opinion was "rational and supported by

substantial evidence." *See Winschel*, 631 F.3d at 1179. Accordingly, the court must reverse and remand.

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's decision is not based upon the proper legal standards. The decision of the Commissioner denying benefits therefore is due to be reversed and this matter remanded to the Administrative Law Judge for the purpose of issuing a new disability determination consistent with this opinion.

A final judgment will be entered separately.

DONE and ORDERED on September 3, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE